Javier L. Merino
The Dann Law Firm, PC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Direct Telephone: 201.355.3440
Facsimile: 216.373.0536
notices@dannlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

| | |
|---|---|
| **FRANK C. RUOCCO**<br>18 Cecile Drive<br>Millville, New Jersey 08332-4828<br><br>       Plaintiff,<br><br>  v.<br><br>**NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING,**<br><br>       Defendant. | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Frank C. Ruocco ("Ruocco"), by and through counsel, states as follows for his Complaint against NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"):

### WHY RUOCCO BRINGS THIS CASE

1.     Ruocco encountered financial difficulties due to a loss of income and as a result defaulted on his mortgage. He filed a bankruptcy petition and confirmed a plan which proposed to cure his mortgage arrears to Shellpoint, his mortgage loan servicer. While Ruocco was complying with his plan, Shellpoint began sending Ruocco erroneous mortgage statements inaccurately stating he was in default on his post-petition mortgage payments. Ruocco sought information from Shellpoint to assist him in understanding why Shellpoint was sending erroneous mortgage

statements. Shellpoint has repeatedly refused to comply with the law and provide Ruocco with this information requested even after Ruocco subsequently notified Shellpoint of their errors.

## <u>INTRODUCTION, PARTIES, JURISDICTION, AND VENUE</u>

2.      Ruocco is the owner of real property, located at, and commonly known as 18 Cecile Drive, Millville, NJ, 08332-4828 (the "Home").

3.      Ruocco has, at all times relevant, maintained the Home as his primary, principal residence and continues to maintain the Home as such.

4.      Shellpoint is the current servicer of a note executed by Ruocco (the "Note") and of a mortgage on the Home that allegedly secures the Note (the "Mortgage") (hereinafter collectively referred to as the "Loan").

5.      Shellpoint services the Loan on behalf of non-party U.S. Bank National Association but solely as Trustee of the New Residential Mortgage Loan Trust 2020-NPL1 ("New Residential"). Shellpoint has serviced the Loan since at least February 4, 2019

6.      Ruocco originated the Loan with Countrywide Homes Loans, Inc. ("Countrywide") on or about July 31, 2007.

7.      Jurisdiction of claims against Shellpoint is conferred by 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA). This action is further specifically filed, in part, to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X of RESPA.

8.      This Court has supplemental jurisdiction to hear any state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Ruocco purchased the Home for his primary residence within the District, Shellpoint does business in this District, and the conduct complained of took place primarily in this District.

## SUMMARY OF CLAIMS

10.      This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

11.      The CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010), specifically the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

12.      Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute 'servicing,' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

13.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

14.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

15.     Shellpoint is subject to the aforesaid regulations and is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

16.     Ruocco asserts claims for relief against Shellpoint for breaches of the specific rules under Regulation X as set forth, *infra*.

17.     Ruocco has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches of Regulation X and such action provides for remedies including actual damages, costs, statutory damages, and attorney's fees.

## STATEMENT OF FACTS

18.     As with many other individuals throughout the country, Ruocco has encountered some economic difficulties and anticipated further difficulties. In or around February 2019, Ruocco fell behind on his payments on the Loan.

19.     In August 2019, Ruocco filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court, District of New Jersey, assigned case number 19-25393 (the "Bankruptcy").

20.     Through the Bankruptcy, Ruocco proposed a Chapter 13 Plan to cure the arrearage on the Loan. On November 22, 2019, the Bankruptcy Court confirmed Ruocco's Plan. *See*, a copy of the Confirmation Order, attached as **Exhibit 1**.

21.     Shortly after the initiation of the Bankruptcy, Shellpoint began sending Ruocco periodic billing statements for the Loan which incorrectly claimed that Ruocco was in default on

his post-petition monthly payment obligations. *See*, a copy of Ruocco's November 17, 2019 statement, attached as **Exhibit 2**.

22.     In an initial attempt to resolve this dispute, on December 31, 2019, Ruocco, through bankruptcy counsel, sent email correspondence to opposing counsel pointing out the errors on the periodic billing statements. *See*, a copy of such email correspondence, attached as **Composite Exhibit 3.** That same day, Shellpoint's counsel advised that Ruocco's concern was forwarded to Shellpoint. *See*, Exhibit 3.

23.     Between December 31, 2019 and January 14, 2019, Shellpoint failed to address or otherwise resolve its errors as to the periodic billing statements for the Loan.

24.     On January 14, 2020, Ruocco, through his bankruptcy counsel, sent a follow-up email to Shellpoint's counsel requesting an update regarding the mortgage statements to which Shellpoint's counsel advised: "Good morning, I apologize for the delay. I have not heard back as of yet. I sent another follow up to our client. I will let you know as soon as I hear back." *See,* Exhibit 3.

25.     Between January 14, 2019 and February 17, 2020, Shellpoint failed to address or otherwise resolve its error as to the periodic billing statements for the Loan.

26.     On February 17, 2020, Ruocco, through his bankruptcy counsel, *again* contacted Shellpoint's counsel to follow up on this request to which Shellpoint's counsel responded and advised, in relevant part, "I sent another follow up to our client. The information you provided was forwarded to the loan servicing department to review and correct anything that needs to be corrected on 1/14. I just sent a follow up to advise status on that." *See*, Exhibit 3.

27.     Over the following months, Shellpoint's improper reporting on the periodic billing statements for the Loan only worsened. For example, Shellpoint's February 16, 2020 mortgage

statement improperly advised Ruocco that he owed $5,229.38 for a "Past Unpaid Amount". Ruocco, through his counsel, sent Shellpoint's counsel several emails over the following months in an attempt to resolve the same, but these efforts proved fruitless. *See*, Exhibit 3.

28.    Due to Shellpoint's refusal to address its misrepresentations on the periodic billing statements for the Loan, Ruocco was forced to retain additional counsel for more specialized assistance.

29.    On or about November 17, 2020, Ruocco, through counsel, sent correspondence to Shellpoint at the address Shellpoint designated for the receipt of notices of error and requests for information pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(b) (the "Designated Address") via USPS Certified Mail [Tracking No.: 70182290000096114578] captioned "Request for Information pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" ("RFI #1") seeking the identity of and contact information for the owner or investor of the Loan and a payoff statement for the Loan. *See*, a copy of RFI #1 and tracking information evidencing delivery of RFI #1 from the website for the USPS (www.usps.com), attached as **Composite Exhibit 4.**

30.    Shellpoint received RFI #1 on November 24, 2020. *See*, Exhibit 4.

31.    On or about November 17, 2020, Ruocco, through counsel, sent correspondence to Shellpoint at the Designated Address via USPS Certified Mail [Tracking No.: 70182290000096114592] captioned "Request for Information pursuant to 12 C.F.R. § 1024.36 ("RFI # 2") to obtain information related to the servicing of the loan, including a transaction history. *See*, a copy of RFI #2 and tracking information evidencing delivery of RFI #2 from the website for the USPS (www.usps.com), attached as **Composite Exhibit 5.**

32.    Shellpoint received RFI #2 on November 24, 2020. *See*, Exhibit 5.

33.     On or about December 7, 2020, Shellpoint sent correspondence to Ruocco purportedly in response to both RFI #1 and RFI #2 (the "RFI Response"). *See*, a copy of the RFI Response, attached as **Exhibit 6.**

34.     Through the RFI Response, Shellpoint: (1) Failed to provide the complete information necessary to identify the owner of the Loan as requested through RFI #1; and (2) failed to provide a complete response to RFI #2. *See*, Exhibit 6.

35.     On or about December 28, 2020, Shellpoint sent correspondence advising "[Shellpoint] is in receipt of your correspondence… [d]ue to the complex nature of the matter, Shellpoint respectfully requests additional time to respond fully to your inquiry." A copy of the correspondence is attached as **Exhibit 7**.

36.     Since Shellpoint failed to provide a complete response to RFI #1 in a timely manner, on or about December 21, 2020, Ruocco, through counsel sent a notice of error to Shellpoint at the Designated Address via Certified Mail [Tracking No.:70182290000096114929] asserting that Shellpoint failed to identify the trustee who acts on NRMLT 2020-NPL1's behalf or the contact information for such entity, as requested ("NOE #1"). *See*, a copy of NOE #1, without enclosures, and tracking information evidencing delivery of NOE #1 from the website for the USPS (www.usps.com), attached as **Exhibit 8.**

37.     Shellpoint received NOE #1 on January 4, 2021. *See*, Exhibit 8.

38.     As of January 22, 2021, Ruocco had not received a complete, proper response to RFI #2.

39.     Since Shellpoint provided an insufficient response to RFI #2, on or about January 22, 2021, Ruocco sent a notice of error to Shellpoint at the Designated Address via Certified Mail [70182290000096119399] asserting that Shellpoint failed to properly respond to RFI #2 ("NOE

#2"). *See*, a copy of NOE #2, without supporting enclosures, and with tracking information evidencing delivery of NOE #2 from the website for the USPS (www.usps.com), attached as **Exhibit 9.**

40.     Shellpoint received NOE #2 on February 1, 2021. *See*, Exhibit 9.

41.     On or about February 1, 2021, Shellpoint sent correspondence in response to NOE #1 (the "NOE #1 Response"). Through the NOE #1 Response, Shellpoint *still* failed to identify the trustee who acts on NRMLT 2020-NPL1's behalf or the contact information for such entity, as requested in RFI #1 and *again* through NOE #1. Shellpoint otherwise stated "[w]e are working to gather the requested information and will forward it to you as soon as possible." *See*, a copy of the NOE #1 Response, attached as **Exhibit 10**.

42.     Between December 21, 2020 and May 19, 2021, Shellpoint also failed to correct the error noticed by and through NOE #2 pertaining to Shellpoint's failure to provide provide a complete response to RFI #2. *See*, Exhibit 9.

43.     On or about May 20, 2021, Ruocco sent a notice of error ("NOE #3") to Shellpoint at the Designated Address via Certified Mail [70173380000027446198] asserting that Shellpoint continued to issue inaccurate periodic billing statements for the Loan and/or assessed or otherwise claimed due and owing inaccurate "Past Unpaid Amounts" for Ruocco's post-petition mortgage payments. *See*, a copy of NOE #3, without supporting enclosures, attached as **Exhibit 11**.

44.     Shellpoint received NOE #3 on May 26, 2021. *See*, Exhibit 11.

45.     Through NOE #3, Ruocco asserted, *inter alia*, that since filing the Bankruptcy, Shellpoint has continuously issued periodic billing statements which inaccurately advise him that he is delinquent on his post-petition payments and enclosed enclosed Ruocco's post-petition bank

statements to evidence his compliance with his post-petition payment obligations and the inaccuracy of Shellpoint's statements. *See*, Exhibit 11.

46.     Shellpoint sent correspondence dated June 23, 2021 purportedly in response to NOE #3 (the "NOE #3 Response") *See*, a copy of the NOE #3 Response, attached as **Exhibit 12**.

47.     Through the NOE #3 Response, Shellpoint generally claimed that no errors occurred and, in stating such determination, inaccurately stated as follows regarding the inaccurate periodic billing statements for the Loan:

> Please note, during an active bankruptcy, the homeowner is responsible for paying post-petition payments, and the trustee is responsible for paying pre-petition payments. *Until the pre-petition payment plan is complete, the loan will be shown as contractually delinquent on the monthly billing statements.*"

*See*, Exhibit 12 (emphasis added).

48.     Contrary to Shellpoint's conclusory allegations, and as evidenced by the periodic billing statements for the Loan sent by Shellpoint and enclosed with NOE #3, a Chapter 13 debtor's periodic billing statement is required to delineate between the payment of pre-petition arrears and the status and amount owing for the debtor's ongoing post-petition payment obligation. *See*, Exhibits 11 and 12*; see also*, 12 C.F.R. § 1026.41(f)(3).

## IMPACT AND DAMAGE

49.     Shellpoint's actions, in failing to properly respond to Ruocco's requests for information, sending inaccurate periodic billing statements, and subsequently refusing to reasonably investigate and/or correct its erroneous conduct, have caused Ruocco to incur attorneys' fees and costs in attempts to obtain such information and correct such errors.

50.     Shellpoint's actions have caused Ruocco doubt and confusion as to the proper amounts due and owing each month for his post-petition payment obligations and have caused him

to fear that despite his timely payments of the amounts believed to be due and owing on the Loan, that he will be claimed to be delinquent or in default on his obligations on the Loan at the conclusion of his Bankruptcy plan rather than obtaining the financial "fresh start" that he is entitled to upon his satisfaction and completion of the plan.

51.    Ruocco has suffered great emotional distress driven by the continued fear of losing his Home in foreclosure due to Shellpoint's actions in inaccurate reporting on Ruocco's mortgage statements, which has resulted in anxiety and other mental distress. Shellpoint's improper delinquent reporting of Ruocco's account has continued to worsened, as noted by Shellpoint's inconsistent reporting in Ruocco's latest mortgage statements. For example, in Ruocco's January and March 2022 mortgage statements, Shellpoint inaccurately reported that Ruocco owed a "Past Unpaid Amount" of $2,120.56 on each statement, even though the Borrower has maintained current on all post-petition payments. Meanwhile, through the Borrower's April 2022 statement, Shellpoint took the opposite approach and inaccurately stated that the Borrower in fact had a $125.16 credit towards his April 2022 payment. This was inaccurate and had the effect of giving Ruocco the false impression that he is only required to remit $2,120.56 towards his April 2022 payment. The following month, Shellpoint issued a statement which egregiously stated that Ruocco was somehow $14,969.08 behind  A copy of these statements is attached as **Composite Exhibit 13**.

### PATTERN AND PRACTICE OF REGULATION X VIOLATION BY SHELLPOINT

52.    Shellpoint's actions are part of a pattern and practice of behavior in violation of Ruocco's rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

53.     At the time of the filing of this Complaint, consumers nationwide have lodged at least Five Hundred Eighty-Three (584) complaints lodged against Shellpoint nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

54.     At the time of the filing of this Complaint, consumers nationwide have lodged at least Five Hundred Eighty-Three (479) complaints lodged against Shellpoint nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

## COUNT ONE:
## VIOLATIONS OF 12 C.F.R. § 1024.36(d)(1) AND 12 U.S.C. §§ 2605(k)(1)(D) AND (E)

### (Failure to properly respond to RFI #1)

55.     Ruocco restates and incorporates all of his statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

56.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

57.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

58.    A servicer must respond to an information request by either:

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

59.    A servicer shall not:

(D) fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or

(E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

12 U.S.C. § 2605(k)(1).

60.    The CFPB issued Official Interpretations to Regulation X, Supplement I to Part 1024 (the "Interpretations"). In relation to requests seeking the "identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan", the CFPB issued the following interpretation expressly providing the requirements for a proper response:

**2. Owner or assignee of a mortgage loan.**

i. When a loan is not held in a trust for which an appointed trustee receives payments on behalf of the trust, a servicer complies with § 1024.36(d) by responding to a request for information regarding the owner or assignee of a mortgage loan by identifying the person on whose behalf the servicer receives payments from the borrower. A servicer is not the owner or assignee for purposes of § 1024.36(d) if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the

mortgage loan obligation. The Government National Mortgage Association is not the owner or assignee for purposes of such requests for information solely as a result of its role as the guarantor of the security in which the loan serves as the collateral.

ii. When the loan is held in a trust for which an appointed trustee receives payments on behalf of the trust, *a servicer complies with § 1024.36(d) by responding to a borrower's request for information regarding the owner, assignee, or trust of the mortgage loan with the following information, as applicable*:

A. For any request for information where the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is not the owner of the loan or the trustee of the securitization trust in which the loan is held: *The name of the trust, and the name, address, and appropriate contact information for the trustee. Assume, for example, a mortgage loan is owned by Mortgage Loan Trust, Series ABC-1, for which XYZ Trust Company is the trustee. The servicer complies with § 1024.36(d) by identifying the owner as Mortgage Loan Trust, Series ABC-1, and providing the name, address, and appropriate contact information for XYZ Trust Company as the trustee.*

B. If the request for information did not expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held: The name and contact information for the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, as applicable, without also providing the name of the trust.

C. If the request for information did expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held: *The name of the trust, and the name, address, and appropriate contact information for the trustee, as in comment 36(a)-2.ii.A above.*

Supplement I to Part 1024 (emphasis added).

61.     RFI # 1 meets the definition of a request for information. *See Exhibit 4.*

62.     Ruocco sent RFI #1 to Shellpoint at the Designated Address and Shellpoint received RFI #1 at the Designated Address on November 24, 2020. *See Exhibit 4.*

63.     Shellpoint was required to provide a written statement to Ruocco in response to RFI #1 within ten (10) business days of receipt providing the identity of and contact information for the owner of the Loan—that is, on or before December 8, 2020. 12 C.F.R. § 1024.36(d)(2)(i)(A) .

64.     Shellpoint's RFI #1 Response indicated: "The current owner of this loan is NRMLT 2020-NPL1". Upon information and belief, said entity is a securitized trust. Shellpoint failed to identify the who acts upon the trust's behalf or the contact information for such entity, as requested.

65.     Ruocco never received any written correspondence from Shellpoint consisting of a complete, proper response to RFI #1 on or before the response deadline, and Shellpoint therefore failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1).

66.     As a result of Shellpoint's actions, Ruocco suffered damages, further described *supra*, and specifically incurred fees in having counsel prepare and send NOE #1 on his behalf to Shellpoint at the Designated Address, which would not have been required but for Shellpoint's failure to properly respond to RFI #1.

67.     Shellpoint's actions, in failing to timely respond to RFI #1, constitute a violation of 12 C.F.R. § 1024.36(d).

68.     As a result of Shellpoint's actions, Shellpoint is liable to Ruocco for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

69.     Additionally, Ruocco requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT TWO:
### VIOLATION OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)(1)(E)

### (Failure to properly respond to RFI #2)

70.     Ruocco restates and incorporates all of his statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

71.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

72.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

73.     12 C.F.R. § 1024.36(c) provides that: Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request.

74.     A servicer must respond to an information request by either:

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

75.     A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."12 U.S.C. § 2605(k)(1)(E).

76.     Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Shellpoint was required to provide written correspondence to Ruocco in response to RFI #2 "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1). That is, Shellpoint was required to provide its response on or before January 8, 2021.

77.     Through the RFI Response, Shellpoint failed to provide the following information requested by and through RFI #2:

1.  An exact reproduction of the life of loan mortgage transaction history for this loan from the contract system of record from your electronic software program for this loan. For purposes of identification, the life of loan transaction history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transaction history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code. *[Note: The first entry on the loan history provided had an effective date of February 28, 2015. Per the Response, the origination date of the Loan was July 31, 2007. Shellpoint has neglected or failed to provide a transaction history for nearly eight (8) years of the Loan's history.]*

2.  Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan from August 1, 2019.

3.  Copies of any and all broker's price opinions you performed or otherwise obtained for the above-referenced property in relation to the above-referenced mortgage loan. *[Note: The transaction history provided for the loan contains multiple entries described as "BPO/Aprsl Cost Disb" plainly evidencing that broker's price opinions were performed in relation to the Loan.]*

[…]

5. A detailed copy of your last two (2) analyses of the escrow account of the mortgage.

6. A copy of an accurate and up-to-date reinstatement quote and/or reinstatement letter showing the exact amount needed to cure any default or delinquency on the above-referenced loan as well as a date through which such amount is to remain good and valid.

7. Each date upon which you received a loss mitigation application, whether complete or incomplete, from the Borrower regarding the Loan from January 10, 2014 to the present. Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."

8. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(b)(2)(i)(B) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to whether any submitted loss mitigation application was complete or incomplete, and if incomplete, stating what documentation and/or information was necessary to complete such application.

9. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(c)(1)(ii) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to which loss mitigation options, if any, you would offer the Borrower on behalf of the owner or assignee of the mortgage.

10. A copy of all trial period payment plans, loan modification agreements, or loss mitigation agreements otherwise that you have offered to the Borrower, regardless of whether they were accepted or rejected by the Borrower.

11. Each date upon which you received an executed loss mitigation agreement from the Borrower regarding the Loan from January 10, 2014 to the present.

12. Each date upon which you received or otherwise came into possession of an appeal of loss mitigation eligibility from the Borrower regarding the Loan from January 10, 2014 to the present.

13. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(h)(4) regarding the Loan from January 10, 2014 to the present. In other words, provide a copy of any written correspondence you sent to the Borrower stating your determination of whether you would offer the Borrower a loss mitigation option based upon an appeal of your denial of the Borrower's eligibility for any loss mitigation option.

*See*, Exhibit 5.

78.     As a result of Shellpoint's actions, Ruocco suffered damages, further described *supra*, and specifically incurred fees in having counsel prepare and send NOE #2 on his behalf to Shellpoint at the Designated Address, which would not have been required but for Shellpoint's failure to properly respond to RFI #2. *See*, Exhibit 9.

79.     Shellpoint's actions, in failing to provide a complete response to a single item requested through RFI #2 by the respective response deadline, constitute a willful violation of 12 C.F.R. § 1024.36(d).

80.     As a result of Shellpoint's actions, Shellpoint is liable to Ruocco for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

81.     Additionally, Ruocco requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT THREE:
### VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2065(k)(1)(C) AND (E)

### (Failure to properly respond to NOE #1)

82.     Ruocco restates and incorporates all of his statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

83.     A servicer shall not "(C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties... or (E) fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2065(k)(1).

84.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

85.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

86.     12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

87.     NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See*, Exhibit 8.

88.     Shellpoint received NOE #1 at the Designated Address on January 4, 2021. *See*, Exhibit 8.

89.     Through NOE #1, Ruocco alleged that Shellpoint committed an error in relation to the Loan for failing to: (1) identify who acts on NRMLT 2020-NPL1's behalf or the contact information for such entity, as requested.

90.     Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Shellpoint was required to provide written correspondence to Ruocco in response to NOE #1 "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error."—that is, on or before February 15, 2021.

91.     Ruocco never received any written correspondence from Shellpoint consisting of a substantive response to NOE #1 on or before the response deadline, and Shellpoint therefore failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1).

92.     As a result of Shellpoint's actions, Ruocco suffered damages, further described *supra*, and specifically incurred fees in having counsel prepare and send NOE #3 on his behalf to Shellpoint at the Designated Address, which would not have been required but for Shellpoint's failure to properly respond to NOE #1. *See*, Exhibit 11.

93.     Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Ruocco's rights.

94.     As a result of Shellpoint's actions, Shellpoint is liable to Ruocco for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. §§ 2605(f)(1) and (3).

### COUNT FOUR:
### VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2065(k)(1)(C) AND (E)

### (Failure to properly respond to NOE #2)

95.     Ruocco restates and incorporates all of his statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

96.     A servicer shall not "(C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties or (E) fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter" 12 U.S.C. § 2065(k)(1).

97.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

98.     Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to the borrower's mortgage loan.

99.     A servicer must respond to a notice of error by either:

(A)  Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

100.    NOE #2 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See*, Exhibit 9.

101.    Shellpoint received NOE #2 at the Designated Address on or before February 1, 2021. *See*, Exhibit 9.

102.    Through NOE #2, Ruocco alleged that Shellpoint committed an error in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E). *See*, Exhibit 9.

103.    12 C.F.R. § 1024.36(d)(2)(i)(B) provides that a servicer must comply with the requirements of paragraph (d)(1) of this section not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

104.    Ruocco never received any written correspondence from Shellpoint consisting of a substantive response to NOE #2 on or before the response deadline, and Shellpoint therefore failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1).

105.    As a result of Shellpoint's actions, Ruocco suffered damages, further described *supra*, and specifically incurred fees in having counsel prepare and send NOE #3 on his behalf to Shellpoint at the Designated Address, which would not have been required but for Shellpoint's failure to properly respond to NOE #2. *See*, Exhibit 11.

106.    Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Ruocco's rights.

107.    As a result of Shellpoint's actions, Shellpoint is liable to Ruocco for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. §§ 2605(f)(1) and (3).

**COUNT FIVE:**
**VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2065(k)(1)(C) AND (E)**

**(Failure to properly respond to NOE #3)**

108.   Ruocco restates and incorporates all of his statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

109.   A servicer shall not "(C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties or (E) fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter" 12 U.S.C. § 2065(k)(1).

110.   12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

111.   Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to the borrower's mortgage loan.

112.   A servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

113.    NOE #3 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See*, Exhibit 11.

114.    Shellpoint received NOE #3 at the Designated Address on or before May 26, 2021. *See*, Exhibit 9.

115.    Through NOE #3, Ruocco asserted, *inter alia*, that since filing the Bankruptcy, Shellpoint has continuously issued periodic billing statements which inaccurately advise him that he is delinquent on his post-petition payments and enclosed enclosed Ruocco's post-petition bank statements to evidence his compliance with his post-petition payment obligations and the inaccuracy of Shellpoint's statements. *See*, Exhibit 11.

116.    Through the NOE #3 Response, Shellpoint generally claimed that no errors occurred and, in stating such determination, inaccurately stated as follows regarding the inaccurate periodic billing statements for the Loan:

> Please note, during an active bankruptcy, the homeowner is responsible for paying post-petition payments, and the trustee is responsible for paying pre-petition payments. *Until the pre-petition payment plan is complete, the loan will be shown as contractually delinquent on the monthly billing statements*."

*See*, Exhibit 12 (emphasis added).

117.    Contrary to Shellpoint's conclusory allegations, and as evidenced by the periodic billing statements for the Loan sent by Shellpoint and enclosed with NOE #3, a Chapter 13 debtor's periodic billing statement is required to delineate between the payment

of pre-petition arrears and the status and amount owing for the debtor's ongoing post-petition payment obligation. *See*, Exhibits 11 and 12*; see also*, 12 C.F.R. § 1026.41(f)(3).[2]

118.    Shellpoint, through the NOE #3 Response, failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Shellpoint did not admit that any errors occurred as alleged in NOE #3. *See*, Exhibits 11 and 12.

119.    Shellpoint, through the NOE #3 Response, did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of NOE #3 and the NOE #3 Response that Shellpoint did not perform a reasonable investigation into the errors alleged through NOE #3 prior to determining that no such errors occurred. *See*, Exhibits 11 and 12.

120.    Shellpoint's statements in NOE #3 Response are in direct contradiction to the explicit rules governing how post-petition obligations and pre-petition obligations are

---

[2] 12 C.F.R. § 1026.41(f)(3) specifically breaks down how the "amount due" on a debtor's periodic billing statements should be calculated and presented to a Chapter 13 debtor:

(3) Chapter 12 and chapter 13 consumers. In addition to any other provisions of this paragraph (f) that may apply, with regard to a mortgage loan for which any consumer with primary liability is a debtor in a chapter 12 or chapter 13 bankruptcy case, the requirements of this section are subject to the following modifications:

(iii)Explanation of amount due. The explanation of amount due information set forth in paragraph (d)(2) of this section may be limited to:

(A)The monthly post-petition payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow;

(B) The total sum of any post-petition fees or charges imposed since the last statement; and

(C) Any post-petition payment amount past due.

[…]

(v) Pre-petition arrearage. If applicable, a servicer must disclose, grouped in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

(A)The total of all pre-petition payments received since the last statement;

(B) The total of all pre-petition payments received since the beginning of the consumer's bankruptcy case; and

(C) The current balance of the consumer's pre-petition arrearage.

to be present through periodic billing statements. *See*, <u>Exhibits 11 and 12</u>; *see also*, 12 C.F.R. § 1026.41(f)(3).

121.   Any reasonable investigation into the errors alleged through NOE #3 would have resulted in Shellpoint acknowledging that the periodic billing statements were inaccurate and Shellpoint's reasoning as to the basis for their belief that there was no error was in contradiction to the express mandate of 12 C.F.R. § 1026.41(f)(3).

122.   Shellpoint's failure to properly respond to NOE #3 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #3 constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and, as a result, Ruocco has suffered actual damages as detailed, *supra*.

123.   Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for Ruocco's rights and in abdication of Shellpoint's obligations under RESPA and Regulation X.

124.   As a result of Shellpoint's actions, Shellpoint is liable to Ruocco for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. §§ 2605(f)(1) and (3).

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Frank C. Ruocco, respectfully requests that this Court enter an order granting Judgment against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing, as follows:

A. For actual damages against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing as to all allegations contained in Counts One through Five;

B. For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing for each and every violation of 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k) as alleged in Counts One and Two for a total of Four Thousand Dollars ($4,000.00);

C.  For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing for each and every violation of 12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(k) as alleged in Counts Three through Five for a total of Four Thousand Dollars ($6,000.00);

D.  For costs, expenses, and reasonable attorneys' fees from Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing as to all allegations contained in Counts One through Five; and,

E.  For all other relief this Court may deem just and proper.

Respectfully submitted,

*/s/ Javier L. Merino*
Javier L. Merino
The Dann Law Firm, PC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Direct Telephone: 201.355.3440
Facsimile: 216.373.0536
notices@dannlaw.com

## JURY DEMAND

Ruocco hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Javier L. Merino*
Javier L. Merino
The Dann Law Firm, PC